## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

KEITH FLOWERS,

      Movant,

v.                             **Civil Action No. 3:11-cv-00574**
                                           **(Criminal No. 3:09-cr-00071)**

UNITED STATES OF AMERICA,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 115) and Respondent's Motions to Dismiss Movant Keith Flowers's Motion Pursuant to 28 U.S.C. § 2255 (ECF Nos. 123 and 124). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's Motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## I.  <u>Background</u>

On January 8, 2009, a confidential informant under the direction of members of the Huntington Violent Crime and Drug Task Force ("the Task Force"), made a controlled buy of approximately .76 grams of cocaine base (or "crack cocaine") for $200 from Keith Lamont Flowers, Jr. ("Flowers") at 17th Street and 11th Avenue, Huntington, West Virginia. (ECF No. 105 at 14-15). The entire exchange was digitally recorded and captured both audio and video images. (*Id.*).

On January 19, 2009, a confidential informant working with the Task Force again purchased a quantity of cocaine base from Flowers, this time outside of a residence located at 306 Division Street, Huntington. (ECF No. 13 at 6). This transaction was also digitally recorded. (*Id.*). On January 23, 2009, members of the West Virginia State Police and the Task Force executed a lawful state search warrant for the residence located at 306 Division Street. (*Id.* at 7-8). Upon entering the residence, law enforcement found Flowers on the couch in the living room with a loaded .357 caliber Ruger revolver located several feet away from him. (*Id.* at 8-9). Law enforcement also discovered two additional loaded firearms, "two bags of crack, several cell phones and [Flowers's] Ohio Department of Rehabilitation and Correction Inmate Identification card" in the front bedroom of the residence. (*Id.*).

On February 6, 2009, a federal warrant for Flowers's arrest was issued based upon an alleged violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (knowingly possessing a firearm, in or affecting interstate commerce, after having been convicted of a crime punishable by imprisonment for a term exceeding one year). (ECF Nos. 1, 2). Subsequently, on March 17, 2009, a federal grand jury in Beckley returned a four-count indictment against Flowers. (ECF No. 16). Counts One and Two of the indictment

charged Flowers with knowingly and intentionally distributing a quantity of cocaine base, on January 8, 2009 and January 19, 2009 respectively, in violation of 21 U.S.C. § 841(a). (*Id.* at 1-2). Count Three charged Flowers with knowingly and intentionally possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a). (*Id.* at 3). Count Four charged Flowers with knowingly possessing firearms after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*Id.* at 4-5). On July 1, 2009, the Government filed an Information seeking imposition of enhanced penalties pursuant to 21 U.S.C. § 851. (ECF No. 76).

On June 30, 2009, Flowers executed a written agreement with the Government in which he agreed to plead guilty to the January 8, 2009 distribution charge in exchange for dismissal of the other three counts against him. (ECF No. 78). Attached to the plea agreement and incorporated into its terms was a stipulation of facts that included details comprising the offense of conviction and a section entitled "Career Offender," which stated, in relevant part, as follows:

> The parties stipulate and agree that the [sic] Mr. Flowers is a career offender as defined in USSG § 4B1.1(a) because (1) Mr. Flowers was at least eighteen years old at the time he committed the offense conduct set forth in this Stipulation; (2) the offense conduct is a felony that is a controlled substance offense; and (3) Mr. Flowers has at least two prior felony convictions that are controlled substance offenses."

(*Id.* at 8). Flowers's plea agreement also contained express waivers of his right to collaterally attack his guilty plea, conviction, and sentence with the exception of claims based upon the ineffective assistance of counsel and, at its conclusion, contained the following acknowledgment:

> I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this seven-page agreement that I have read and carefully discussed every part of it with my attorney,

3

> that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(*Id.* at 7). Flowers initialed each page of the agreement, signed, and dated it. He subsequently signed a separate written plea of guilty, which stated, "In the presence of Kerry Nessel, my counsel, who has fully explained the charges contained in the indictment against me, and having received a copy of the indictment before being called upon to plead, I hereby plead guilty to the charge contained in count one of the indictment." (ECF No. 77).

Flowers's plea hearing was held on July 1, 2009. (ECF No. 105). At the hearing, the District Court engaged Flowers in a thorough Rule 11 colloquy. (*Id.*). First, the Court established that Flowers was competent to enter a guilty plea and then questioned him regarding the adequacy of his legal representation:

> The Court: Mr. Flowers, have you had enough time to discuss the case with your lawyer?
>
> Flowers: Yes, sir.
>
> The Court: Has he been able to answer your questions about what you should do?
>
> Flowers: Yes, sir.
>
> The Court: Are you completely satisfied with the legal advice he's given you?
>
> Flowers: Yes, sir.

(*Id.* at 4–5). Subsequently, Flowers's attorney explained the contents of the plea agreement on the record. (*Id.* at 5–8). The Court then questioned Flowers regarding his

understanding of the agreement:

> The Court:    Mr. Flowers, do you understand what this agreement does and what it requires of you?
>
> Flowers:    Yes, sir.
>
> The Court:    A part of this agreement is the stipulation of facts which your lawyer just summarized. One part of that stipulation of facts deals with the admission by you that you sold .76 grams of crack cocaine on an occasion. The other part of that admission is where you admit that you have prior convictions. Do you understand that?
>
> Flowers:    Yes, sir.
>
> The Court:    Do you understand that you've agreed that that stipulation of facts could be used against you today for your plea, or sentencing, or, if it becomes necessary, it could be used at trial?
>
> Flowers:    Yes, sir.
>
> The Court:    Now, did you go over each of these paragraphs with your lawyer before you signed this plea agreement?
>
> Flowers:    Yes, sir.
>
> The Court:    Do you want me to accept the plea agreement?
>
> Flowers:    Yes, sir.

(*Id.* at 9-10).

Next, the Court read the contents of the indictment to Flowers, explaining the terms contained therein. (*Id.* at 10-12). The Court reviewed the factual basis for Flowers's guilty plea, asking him to state in his own words what he had done that made him guilty of the January 8, 2009 distribution charge. (ECF No. 105. at 12–13). Flowers testified that on January 8, 2009, at 17th Street and 11th Avenue, Huntington, West Virginia, he sold "a little under a gram" of crack cocaine to a confidential informant for $200. (*Id.*).

5

The Government then presented the testimony of Trooper First Class J.D. Lucas of the West Virginia State Police who was assigned to the Task Force that investigated and arrested Flowers. (*Id.* at 13-14). Officer Lucas testified that the Task Force utilized a confidential informant to make a controlled buy from Flowers on January 8, 2009, and that the entire transaction was recorded on audio and video. (*Id.* at 14-15). Officer Lucas testified that he had personally viewed the recording and it showed Flowers selling crack cocaine to the confidential informant for $200. (*Id.*). Officer Lucas further testified that the West Virginia State Police Laboratory analyzed the crack cocaine and determined that Flowers had distributed .76 grams. (*Id.* at 15). Officer Lucas verified that Flowers was over 18 years at the time he committed the crime in question, and that Flowers had previously been convicted of two felony controlled substance offenses: 1) a 2001 Ohio conviction for possession of at least 10 grams but less than 25 grams of crack cocaine, in violation of Ohio Rev. Code § 2925.11; and 2) a 2005 Ohio conviction for trafficking in cocaine, in violation of Ohio Rev. Code § 2525.03A. (ECF No. 105 at 16). At the conclusion of the testimony, the Court asked Flowers if Officer Lucas's statements were substantially correct. (*Id.*). Flowers agreed that the testimony was accurate. (*Id.*).

The Court proceeded to explain the consequences of Flowers's guilty plea. (*Id.* at 17-26). The Court reviewed with Flowers his potential loss of civil rights, his sentencing exposure, the applicability of the sentencing guidelines, the terms of supervised release, potential monetary penalties, and the loss of federal benefits. (*Id.* at 17, 22-24). The Court explicitly advised Flowers that his sentence could not be determined until the Court had received and reviewed a presentence report; that the ultimate sentence imposed could be more or less severe than the guidelines; and that the sentence could certainly differ from any estimate provided by defense counsel, stating:

| | |
|---|---|
| The Court: | Do you understand that the Court cannot determine the guideline range for your case until a presentence report is done and your lawyer and the Government each have a chance to review it and challenge it if either side thinks it's wrong? |
| Flowers: | Yes, sir. |
| The Court: | Do you understand that the sentence I impose could be different from any estimate your lawyer has given you? |
| Flowers: | Yes, sir. |
| The Court: | Do you understand that although I have to consider the sentencing guidelines, I can impose a sentence more severe or less severe than the guidelines would call for? |
| Flower: | Yes, sir. |

(*Id.* at 23-24). Next, the Court explained the binding nature of the guilty plea. (*Id.* at 24-25). Continuing with the plea colloquy, the Court reviewed the terms of Flowers's plea agreement concerning Flowers's waiver of appellate and collateral attack rights:

| | |
|---|---|
| The Court: | Do you understand you may have the right to appeal your conviction if you believe your guilty plea was unlawful or involuntary or if there's some other fundamental defect in these proceedings that you haven't waived by pleading guilty? |
| Flowers: | Yes, sir. |
| The Court: | Do you understand that both you and the Government may have the right to appeal the sentence I impose except to the extent that you've limited or waived your rights in the plea agreement? |
| Flowers: | Yes, sir. |
| The Court: | In the plea agreement you agreed to give up your right to challenge your guilty plea or the conviction or the sentence imposed in any collateral attack, and that includes a motion under 2255, which is also called a writ of habeas corpus, except for a claim based on ineffective assistance of counsel. |
| | These waivers are generally enforceable, but if you want to raise any of these issues, you're going to have to present a |

7

|               | challenge to that waiver when you get to the Court of Appeals. |
|---------------|---------------------------------------------------------------|
| Flowers:      | Yes, sir.                                                     |
| The Court:    | Also in the plea agreement, you agreed that while you or the Government may appeal the Court's determination of the sentencing range if there's a proper objection, that you're knowingly and voluntarily waiving any right to seek appellate review -- that's the review on appeal -- of any sentence of imprisonment or fine on any other ground as long as the sentence is below or within the guideline range determined by the Court before any departure or variance. |
|               | Again, these waivers are generally enforceable, but if you want to challenge that, you'll have to do that in the appellate court. Do you understand that? |
| Flowers:      | Yes, sir.                                                     |

(ECF No. 105 at 25-26).

The Court also discussed at length the constitutional and other legal rights Flowers would give up if he chose to plead guilty. (*Id.* at 26-28). Finally, the Court questioned Flowers regarding the voluntary nature of his guilty plea:

| The Court:    | Has anyone forced you, threatened you, or intimidated you, or talked you into pleading guilty against your will? |
|---------------|------------------------------------------------------------------------------------------------------------------|
| Flowers:      | No, sir.                                                                                                         |
| The Court:    | Are you acting voluntarily and of your own free will in entering this guilty plea?                              |
| Flowers:      | Yes, sir.                                                                                                         |
| The Court:    | Is pleading guilty your own idea?                                                                                |
| Flowers:      | Yes, sir.                                                                                                         |
| The Court:    | Has anyone promised you something or told you anything different from what we've discussed here in court today to get you to plead guilty? |
| Flowers:      | No, sir.                                                                                                         |

> The Court:   Mr. Flowers, I find your guilty plea is voluntary. At this time do you have any questions or seconds thoughts about entering a plea of guilty?
>
> Flowers:   No, sir.

(*Id.* at 28-29). In conclusion, the District Court stated, "I find that Mr. Flowers is fully competent and capable of entering an informed plea, there's a sufficient factual basis for his plea, he understands the nature of the charge and the consequences of a guilty plea, he understands the constitutional and other legal rights he's giving up by pleading guilty, and his plea is voluntary." (*Id.* at 31-32). The Court accepted Flowers's plea and adjudged him guilty of the distribution charge. (*Id.* at 32). The Court deferred acceptance of the plea agreement pending completion of a Presentence Investigation Report (PSR). (*Id.*). Sentencing was scheduled for September 28, 2009.

A PSR was prepared prior to sentencing, which reviewed the charge and Flowers's conviction, the plea agreement and stipulation, the offense conduct, and the facts surrounding Flowers's arrest. (ECF No. 92). Flowers's base offense level was calculated to be 18. (*Id.* at 7). A two-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1) was added because a loaded firearm attributed to Flowers was found in the residence during the search. (*Id.*). Another two-level enhancement under U.S.S.G. § 3C1.1 was added for obstruction of justice because Flowers wrote a letter asking a female acquaintance to lie on his behalf regarding his residence.[1] (*Id.*). Flowers's adjusted offense level was therefore calculated to be 22. (*Id.*). The Probation Officer did not give Flowers any reduction for acceptance of responsibility. Finally, the Probation Officer reviewed Flowers's criminal history and found that Flowers met the career offender criteria set forth in U.S.S.G. § 4B1.1, resulting in an adjusted offense

---

[1] The PSR indicates that the probation officer provided a copy of the letter and a statement from the recipient for the District Court's review. (ECF No. 92 at 19-20).

level of 34. (*Id.*). Flowers received an automatic criminal history category of VI due to his classification as a career offender. (ECF No. 92 at 12). Nonetheless, the Probation Officer noted that Flowers's history of criminal convictions yielded a criminal history score of 19, which also netted a criminal history category of VI. (*Id.*). Based on a total offense level of 34 and a criminal history category of VI, the Probation Officer calculated Flowers's guideline range to be 262–327 months of imprisonment. (*Id.* at 16).

Flowers raised four objections to the final PSR, challenging: 1) the amount of cocaine base for which he was held responsible, 2) the obstruction of justice enhancement, 3) the dangerous weapon enhancement, and 4) the recommendation that Flowers be denied credit for acceptance of responsibility. (*Id.* at 19–20). The probation officer rejected Flowers's challenges regarding the amount of cocaine base and the two enhancements as moot in light of the career offender provisions, but asserted that Flowers's conduct was relevant for the court to consider at sentencing. (*Id.*). The probation officer denied Flowers a decrease for acceptance of responsibility due to the same behavior that formed the basis of Flowers's obstruction of justice enhancement. (*Id.* at 20).

Sentencing took place on October 26, 2009. (ECF No. 104). Flowers appeared in person with counsel. The Court began by confirming that Flowers had read the PSR and reviewed it with his attorney. (*Id.* at 2–3). After establishing that Flowers understood the contents of the PSR, the Court addressed Flowers's objections to the report. (*Id.* at 3-7). Counsel for Flowers agreed that the objections raised to the PSR were "effectively mooted by the career offender provision," and that Flowers did not contest the PSR's finding that he was a career offender, but counsel emphasized that he wanted the Court to be aware of the objections when considering a sentence. (*Id.* at 6-7). The District

Court specifically reviewed the portion of the PSR which detailed law enforcement's search of the 306 Division Street residence:

> The defendant was encountered lying on a couch. There was a loaded pistol nearby. In addition, in a bedroom later to be determined to be the room the defendant used, there were two other loaded weapons and there were also in that same. . . spare bedroom, that's where four baggies of cocaine and a small amount of marijuana were found and the cocaine, the crack cocaine found there, .97 grams, is part of the total attributed to the defendant, which amounted to 2.64 grams.

(*Id.* at 8 (internal quotations omitted)). The District Court asked if Flowers denied the accuracy of that recitation, to which counsel stated that he did not. (*Id.*). Consequently, the District Court adopted the presentence report and addendum based upon a finding of sufficient indicia of reliability to support its accuracy. (ECF No. 104 at 8). The Court found no particular reason to resolve the objections, however, because the career offender guidelines would likely control the sentencing range.

Turning to the sentencing guidelines, the Court indicated that before applying the career offender provisions, Flowers's base offense level was 18. Assuming for the purposes of calculation that the recommendations in the PSR were appropriate, the Court added a two-level enhancement for Flowers's possession of a dangerous weapon and a two-level enhancement for obstruction of justice, totaling a base offense level of 22. (*Id.* at 9). The Court then addressed Flowers's classification as a career offender under U.S.S.G. § 4B1.1, noting that he qualified as a career offender in view of his stipulation in the plea agreement admitting the two prior drug-related convictions in Ohio occurring in 2001 and 2005. (*Id.* at 10). Given the 30-year maximum sentence available under the § 851 enhancement, Flowers's base offense level under the career offender provisions was 34. (*Id.*). Because 34 was higher than 22, the career offender offense level applied. U.S.S.G. § 4B1.1(b).

The District Court next considered the probation officer's denial of credit for acceptance of responsibility. (*Id.*). Despite the PSR's recommendation that Flowers be denied credit, the Government confirmed that it did not dispute Flowers's eligibility to receive a reduction for acceptance of responsibility. (ECF No. 104 at 11). As a result, the District Court granted Flowers a two-level decrease for acceptance of responsibility. (*Id.*). Upon the Government's motion, the District Court granted an additional one-level decrease for timely notifying authorities of his decision to plead guilty, thus resulting in a total offense level of 31. (*Id.*). Given the offense level and the criminal history category of VI, Flowers's guideline sentence range was 188–235 months of imprisonment. (*Id.*).

Although not explicitly arguing for a downward variance, counsel for Flowers requested that his client receive the "lowest possible sentence." (*Id.* at 13). Counsel argued that Flowers did not have a violent past and had paid for his prior crimes; therefore, he deserved the Court's mercy. Flowers also made a statement to the Court expressing remorse for his past conduct. (ECF No. 104 at 14-15). In determining a fair sentence, the Court discussed Flowers's criminal history, indicating that he had "a terrible record" with a number of felony convictions involving "serious drug crimes and weapons violations." The Court next addressed the effects of the career offender provisions, expressing concern that the provisions more than doubled the length of imprisonment that would otherwise have applied. (*Id.* at 16). The Court noted that "the guidelines tend to punish crack cocaine disproportionately more than powder cocaine for reasons that can't be justified." Weighing Flowers's significant criminal history against the "small amount of crack cocaine" for which Flowers was held accountable ("just over two and a half grams"), the Court determined that the career offender provisions were too harsh. Consequently, the Court reduced Flowers's sentence below

the applicable guideline range to a term of imprisonment of 168 months, or "twice the low-end" of the guideline range for an offense level of 22. (*Id.* at 17-8).

## II.  **Movant's Grounds for Vacating, Setting Aside, or Correcting His Sentence.**

Flowers raises four grounds in support of his Motion to Vacate:

1.  Counsel rendered ineffective assistance by stipulating in the plea agreement to the career offender classification.

2.  Counsel rendered ineffective assistance by failing to object to the amount of crack cocaine affecting his base offense level.

3.  Counsel rendered ineffective assistance by failing to object to the dangerous weapon enhancement.

4.  Counsel rendered ineffective assistance by failing to move for a downward departure or variance.

## III.  **§ 2255 Standards and Ineffective Assistance of Counsel**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion.

Nonetheless, a § 2255 motion is not an alternative to filing a direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Nonconstitutional claims that *could have* been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *Stone v. Powell*, 428 U.S. 465, 477, n.10,

13

96 S.Ct. 3037, 49 L.Ed2d 1067 (1976) (citing *Davis v. United States*, 417 U.S. 333, 345–346 and n. 15, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Sunal v. Large*, 332 U.S. 174, 178–79, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947)); *see also United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009) ("A petitioner who waives the right to appeal is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal.") (quoting Brian R. Means, *Fed. Habeas Practitioner Guide,* Jurisdiction ¶ 1.23.0 (2006/2007)) (emphasis in the original) (internal citations omitted). Nonconstitutional claims that *could not have* been asserted on direct appeal may be raised in a § 2255 motion only if the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" *Stone*, 428 U.S. at 477 n.10 (quoting *Davis*, 417 U.S. at 346; *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)) or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

Similarly, a constitutional error that could have been, but was not raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621–22, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)); *United States v. Mikalajunas,* 186 F.3d 490, 492–93 (4th Cir. 1999). To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather

than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 621.

In addition to the above-stated limitations inherent in a collateral attack, a guilty plea, such as the one in this case, further diminishes the scope of potential claims under § 2255. Inasmuch as a voluntary and intelligent guilty plea amounts to an admission of the material elements of the charged crime, *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), it constitutes a waiver of *all claims* relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *United States v. Moussaoui,* 591 F.3d 263, 279 (4th Cir. 2010); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)); *See also United States v. McCleary,* 112 F.3d 511, 1997 WL 215525 (4th Cir. 1997) (unpublished). In *McCleary,* the Fourth Circuit clarified the effect of the waiver as follows:

> In *Tollett,* the Supreme Court explained that 'a guilty plea represents a break in the chain of events which has preceded it in the criminal process.' As a result, '[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea.'

*Id.* at *2 (citing *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)) (internal citations omitted). "Thus where a defendant does not challenge the jurisdiction of the court's 'power to enter the conviction or impose the sentence,' 'the inquiry is ordinarily confined to whether the underlying plea was both counseled and

15

voluntary.'" *United States. v. Fabian*, 798 F.Supp.2d 647, 669 (D. Md. 2011) (quoting *United States v. Broce,* 488 U.S. at 569 (1989)); *See also Tollett*, 411 U.S. at 266 (In the context of a guilty plea, the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity.")*.*

In the present case, Flowers does not contest the jurisdiction of the District Court; rather, he claims that he was denied the effective assistance of counsel during the plea and sentencing phases of his case. The Sixth Amendment to the United States Constitution guarantees each criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Id.* at 685-86, "defects in assistance that have no probable effect upon the [case's] outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).  The crucial question is whether counsel's performance was so deficient and prejudicial that it rendered unfair and unreliable the result of the criminal proceeding. *Strickland,* 466 U.S. at 687.

In *Strickland*, *supra*, the Supreme Court adopted a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Counsel's performance must be assessed with "a context-dependent consideration of the

challenged conduct as seen from counsel's perspective at the time," *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), because "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Wiggins,* 539 U.S. at 523. Thus, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (internal quotation marks omitted). "The question [under *Strickland*] is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington,* 131 S.Ct. at 778.

To establish prejudice from any such deficient performance, a defendant "must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro,* 642 F.3d at 450 (citing *Harrington,* 131 S.Ct. at 778). It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In order to succeed on an ineffective assistance of counsel claim related to representation prior to entry of his guilty plea, Flowers must demonstrate that his counsel's ineptitude substantially affected his decision to plead guilty. *Fabian*, 798 F.Supp.2d at 670; *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). (Movant must show that counsel's representation fell below an objective

standard of reasonableness and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). In the context of sentencing, Flowers must demonstrate that counsel's performance fell below an objective standard of reasonableness and that a "reasonable probability" exists that his sentence would have been more lenient absent counsel's errors. *See Buckner v. Polk*, 453 F.3d 195, 201–08 (4th Cir. 2006); *Royal v. Taylor,* 188 F.3d 239, 248–49 (4th Cir. 1999); *See also Lafler v. Cooper*, ___U.S.___, 132 S.Ct. 1376, 1385–86, 182 L.Ed.2d 398 (2012) (quoting *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001)) (internal citations omitted) (Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'")

### IV. <u>Analysis</u>

#### A. Ineffective Assistance Related to the Guilty Plea

Flowers argues that he received ineffective assistance of counsel related to his guilty plea because counsel stipulated to Flowers's classification as a career offender. (ECF No. 115 at 4). Flowers claims that he did not understand the significance of career offender status until after he was sentenced. (ECF No. 115 at 4). He also alleges that the underlying crimes warranting his career offender status involved a total of less than 15 grams of cocaine base, a point which counsel failed to argue on his behalf. (*Id.*). Thus, in Flowers's view, he should not have been treated as a career offender. (*Id.*). Of particular significance to a resolution of this motion, however, is the absence of any allegation by Flowers that he would have insisted on going to trial if not for his counsel's errors. Instead, Flowers merely complains that he did not expect his sentence to be so long.

The undersigned finds this contention to be entirely without merit. From a factual standpoint, Flowers was well aware that his prior drug-related convictions thrust him in the category of "career offender" under the sentencing guidelines and also formed the basis of a sentence enhancement under the § 851 Information filed by the Government. Even still, Flowers freely stipulated to the prior convictions in order to receive the benefits of the plea agreement.[2] (ECF No. 78 at 2, 8-9). He knew that his maximum sentence exposure was increased to thirty years, rather than twenty years, under the statutory enhancement (ECF No. 105 at 5-6, 17). Flowers explicitly confirmed that he understood the contents of the stipulation and knew that it could be used against him at the plea, sentencing, or trial if one became necessary. (*Id.* at 9-10). He indicated that he had discussed the sentencing guidelines with his lawyer and understood that his ultimate sentence (1) could not be determined until after a PSR was prepared; (2) was within the sole discretion of the Court despite the terms of the plea agreement; and (3) could vary from the sentencing guidelines or any estimates provided by his counsel. (*Id.* at 23-24). Flowers acknowledged that his guilty plea was voluntary and, when directly asked, denied having second thoughts about entering the guilty plea. (*Id.* at 28-29). Flowers's sworn admissions and statements made at the plea hearing "carry a presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). Flowers clearly made a voluntary and intelligent choice to waive his right to a jury trial and admit his prior convictions, knowing full well that his criminal history would increase his potential sentence exposure. Consequently, Flowers is hard-pressed to establish that his counsel

---

[2] The record indicates that Flowers first stipulated to his prior felony convictions in an effort to keep the details of the crimes from the jury. *(See* ECF Nos. 42, 42-1).

provided ineffective representation.

Moreover, Flowers is equally unable to show prejudice from his counsel's alleged errors. A defendant is considered to be a "career offender" for sentencing purposes if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The record demonstrates conclusively that Flowers qualified as a "career offender" for sentencing purposes. First, Flowers was born on August 15, 1977, making him 31 years old on the date of commission of the crime, January 8, 2009. (ECF No. 92 at 3). Second, the instant offense clearly constituted a controlled substance offense. (ECF No. 16 at 1). Third, Flowers stipulated in the plea agreement that he had previously been convicted of two qualifying underlying crimes: 1) On February 6, 2001, Flowers was convicted of Possession of 10 − 25 grams of Crack Cocaine, in violation of Ohio Rev. Code § 2925.11; and 2) On April 11, 2005, Flowers was convicted of Trafficking in Cocaine, in violation of Ohio Rev. Code § 2525.03A.  (ECF No. 78 at 8-9). At the plea hearing, Officer Lucas of the West Virginia State Police confirmed that Flowers had been convicted of both crimes. (ECF No. 105 at 16). At the sentencing hearing, the Government identified a third offense listed in the PSR, for Trafficking in Cocaine and Trafficking in a Controlled Substance within 1,000 yards of a School, to which Flowers pled guilty on February 14, 1997 in Kentucky. (ECF Nos. 104 at 11-12, 92 at 8). The total amount of crack cocaine involved in these offenses is immaterial as to whether they constitute underlying crimes for career offender classification purposes. *See* U.S.S.G. § 4B1.1(a).

The weight of the evidence against Flowers on the distribution charge was overwhelming. The Government had a digital recording that showed Flowers selling crack cocaine and simultaneously captured his verbal communications. The subsequent search of Flowers's residence revealed additional amounts of crack cocaine and firearms. Law enforcement had obtained Flowers's criminal record and confirmed three other felony convictions for drug-related offenses, which the Government clearly planned to present to the jury if permitted (ECF No. 42). Accordingly, there simply is no reasonable probability that the outcome of the criminal proceeding would have been different but for the alleged errors of counsel. For the foregoing reasons, the undersigned **FINDS** that Flowers has failed to demonstrate ineffective assistance of counsel relating to his career offender status.

### B. Ineffective Assistance Related to Sentencing

Flowers argues that counsel rendered ineffective assistance related to his sentencing based upon three alleged deficiencies: 1) Counsel failed to object to the amount of crack cocaine used to calculate his base offense level; 2) Counsel failed to object to the dangerous weapon enhancement; and 3) Counsel failed to move for a downward departure or variance. (ECF No. 115 at 5-6).

#### 1. *Failure to Object to the Amount of Crack Cocaine Involved*

First, Flowers contends that he should only have been held responsible for 1.22 grams of crack cocaine, rather than the 2.64 grams which formed the basis of his base offense level. (ECF No. 115 at 5). He argues that counsel's failure to argue this point during sentencing amounted to ineffective assistance of counsel. (*Id.*).

The probation officer who prepared the PSR attributed four separate amounts of crack cocaine to Flowers: 1) Flowers sold .76 grams to the confidential informant on

January 8, 2009, 2) Flowers sold .45 grams to the confidential informant on January 19, 2009, 3) Flowers sold another .46 grams to the confidential informant later that same day, January 19, 2009, and 4) Police found .97 grams in Flowers's bedroom while executing a search warrant on January 23, 2009. (ECF No. 92 at 5-6). Each amount was determined by the West Virginia State Police Forensic Laboratory. (*Id.*). Hence, the total amount of crack cocaine attributed to Flowers was 2.64 grams. (*Id.* at 6). As such, his base offense level was calculated to be 18. (*Id.* at 7).

Had Flowers been held responsible for only 1.22 grams, his base offense level would have been 16. U.S.S.G. § 2D1.1(c)(12). Nevertheless, as the District Court observed, the amount of crack cocaine attributable to Flowers was "effectively mooted" by the career offender enhancement. (ECF No. 104 at 6-7). Flowers clearly qualified as a career offender. As a result, his base offense level increased to 34. (*Id.* at 10). Following the Court's three-level decrease for Flowers's acceptance of responsibility, the total offense level was calculated to be 31. (*Id.* at 11). This is well above both the base offense level of 18 and Flowers's adjusted offense level of 22. Even if counsel had argued that the applicable amount of crack cocaine was 1.22 grams and the Court had sustained that objection, Flowers would still have been sentenced based on the career offender guidelines. *See* U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply."). Given the applicability of the career offender enhancement, there is no support for Flowers's argument that counsel's performance was deficient.

Even assuming that counsel's performance was deficient, Flowers's argument fails because he cannot demonstrate any resulting prejudice. Based upon an offense

level of 31 and a criminal history category of VI, the applicable sentencing range was 188–235 months. (ECF No. 104 at 11). However, the District Judge granted a downward variance based upon his perception that the guideline sentencing range was disproportionality harsh in light of the small amount of controlled substance attributed to Flowers, as well as the overall disparity between punishments for crack cocaine offenses and powder cocaine offenses. (*Id.* at 17). In doing so, the District Court stated:

> If the career offender provisions didn't apply, you'd be looking at 84 to 105 months. I don't believe that's sufficient, given the combination of your multiple convictions and your tendency to have firearms around you when you're dealing drugs, but I think a sentence that's twice the low end of that guideline range is appropriate.
>
> So I'm going to sentence you to a term of 168 months. That is below the guideline range, but I believe that a variance is warranted for the reasons I just stated. I think that variance is necessarily tempered by the serious criminal history that you present. But for that, I think a more substantial reduction might have been appropriate.

(*Id.* at 18). The District Court did refer to a sentencing range that corresponds with offense level 22, which is the adjusted offense level based upon 2.64 grams of cocaine. (*Id.*) However, it is evident that the Court, having decided to depart from the sentencing guidelines, calculated Flowers's sentence by weighing various factors, including the harshness of the career offender guidelines, Flowers's extensive criminal history, his likelihood to break the law in the future, the amount of crack cocaine involved in the offense, and his "tendency to have firearms around [him] when [he was] dealing drugs." (*Id.*). Flowers presents no facts demonstrating a reasonable probability that his sentence would have been more lenient but for counsel's failure to argue that the appropriate amount of crack cocaine was 1.22 grams. Therefore, the undersigned **FINDS** this claim of ineffective assistance of counsel to be insupportable.

### 2. *Failure to Object to the Violent Weapon Enhancement*

Next, Flowers asserts that his counsel was ineffective by failing to object to the two-level enhancement for possession of a dangerous weapon. (ECF No. 115 at 6). According to Flowers, counsel's representation to the District Court that Flowers "knew or had reason to believe there may have been a weapon in the house" was "totally not true." (*Id.*). Rather, Flowers asserts that he had "no knowledge at all" of the presence of a firearm in the apartment at the time of his arrest.[3] (*Id.*). Flowers's position is again unavailing.

The issue of the dangerous weapon enhancement was mooted by Flowers's status as a career offender. Flowers's base offense level was calculated to be 18. (ECF No. 104 at 9). He received a two-level enhancement for obstruction of justice and a two-level enhancement for possession of a dangerous weapon. (*Id.*). Thus, Flowers's adjusted offense level without the career offender enhancement was 22. (*Id.* at 15). However, because Flowers qualified as a career offender for sentencing purposes, his offense level increased to 34. (*Id.* at 10). After the District Court granted a three-level decrease for Flowers's acceptance of responsibility, his offense level was 31. (*Id.* at 11).  Inasmuch as the dangerous weapon enhancement did not affect the offense level that formed the basis of Flowers's sentencing range, counsel's "failure" to object to it did not fall below

---

[3] This factual representation by Flowers is somewhat curious considering the record.  Flowers objected in writing to the dangerous weapon enhancement recommended in the presentence report. At the sentencing hearing, Flowers's counsel and the Court engaged in a lengthy discussion regarding this objection.  On several occasions, Flowers's counsel indicated that Flowers had reason to believe a firearm was located in the residence but denied that it belonged to him.  Although Flowers was present during the entire exchange, he never corrected his counsel's statements.  In addition, the United States represented to the Court that two firearms were located in a bedroom that Flowers allegedly used and, when law enforcement executed its search of the residence, the officers found Flowers laying on a couch just a few feet away from a third firearm.  (ECF No. 104 at 3-8). Once again, Flowers made no effort to refute these statements to the Court.

an objective standard of reasonableness.

In addition, even if counsel's performance was deficient, Flowers cannot show a reasonable probability that his sentence would have been more lenient. *See Buckner*, 453 F.3d at 201–08. A district court has broad discretion when considering a firearm enhancement. *United States v. Dismukes*, 454 F. App'x 167, 169 (4th Cir. 2011).[4] During the preliminary hearing, Officer Lucas testified that upon executing a search warrant of 306 Division Street, law enforcement found Flowers on a couch in the living room within several feet of a loaded pistol that was lying in plain sight. (ECF No. 13 at 8-9). During sentencing, the District Court specifically inquired about the firearm enhancement:

> The Court: Well, what's the government's evidence about this and what's the government's position concerning this firearm?
>
> Government: Well, Your Honor, as the Court knows, under 2D1.1, it doesn't matter whether or not he owned the firearm or whether or not he owned the house. The evidence was that Mr. Flowers was staying at that apartment. He had – the room where the other two firearms and the additional crack was located was a room that all the witnesses, if we would have gone to trial, would have said that Mr. Flowers occupied; and when the officers went in to do the search that day, the defendant was laying on the couch and he was -- the firearm was beside him or was within, you know, two feet of him where he could have touched the firearm.

---

[4] Under the sentencing guidelines, a dangerous weapon enhancement is proper when "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." *United States v. Manigan*, 592 F.3d 621, 628–29 (4th Cir. 2010) (internal citations omitted). The Government must prove the facts needed to support a sentencing enhancement by a preponderance of the evidence. *United States v. Milam*, 443 F.3d 382, 386 (4th Cir. 2006). The enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3. "[T]he Government need show only that the weapon was possessed during the relevant illegal drug activity." *United States v. McAllister*, 272 F.3d 228, 234 (4th Cir. 2001). "[P]roof of constructive possession of the dangerous weapon is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden." *Manigan*, 592 F.3d at 629.

> So it is the government's position that under 2D1.1,
> obviously, if that applies, could be applied in this case as a
> career offender, I think there's evidence that he possessed a
> firearm for purposes of that statute.

(ECF No. 115 at 5-6). Counsel stated that Flowers denied owning the firearm but that

counsel had explained that under the statute he could still be treated as having

possessed the firearm. (*Id.* at 4-5). The Court then recited the relevant language

contained in the PSR:

| | |
|---|---|
| The Court: | Well, just to be further specific about it, in Paragraph 11, it says that, "The defendant was encountered lying on a couch. There was a loaded pistol nearby. In addition, in a bedroom later to be determined to be the room the defendant used, there were two other loaded weapons and there were also in that same" -- it says, "in the same spare bedroom, that's where four baggies of cocaine and a small amount of marijuana were found and the cocaine, the crack cocaine found there, .97 grams, is part of the total attributed to the defendant, which amounted to 2.64 grams." |
| Counsel: | Yes, sir. |
| The Court: | So does the defendant deny that? |
| Counsel: | No, sir. |
| The Court: | All right. Well, based on this, the Court will find a sufficient indicia of reliability to support the accuracy of the presentence report and the addendum. The Court will not further resolve the objections finding that because the career offender provisions do apply, given the defendant's criminal history, they would fix the guideline range in any event. |

(ECF No. 104 at 8). Flowers argues cursorily that he "had no knowledge at all" of any of

the firearms in the house. (ECF No. 115 at 6). However, Flowers does not deny that law

enforcement found a loaded pistol lying in plain view within several feet of Flowers at

the time of the search. Nor does Flowers offer any facts or evidence to undercut the

District Court's finding of sufficient indicia of reliability that Flowers possessed the

firearm. In any event, the District Court's sentence was not directly based upon the

dangerous weapon enhancement; instead, it was reached by considering multiple factors, including Flowers's history of criminal convictions for both drug and weapons offenses. Therefore, the undersigned **FINDS** that Flowers has failed to establish either prong of *Strickland* in regard to the firearm enhancement.

### 3.    *Failure to Move for a Downward Departure or Variance*

Finally, Flowers argues that counsel rendered ineffective assistance by failing to move for a downward departure or variance. (ECF No. 115 at 4). This claim obviously lacks merit because the Court, in fact, granted Flowers a favorable downward variance, sentencing him to 168 months imprisonment, rather than to a sentence within the guideline range of 188 to 235 months (ECF No. 104 at 18). Moreover, the record is clear that Flowers's counsel sought "the lowest possible sentence," arguing that his client had grown up on the streets and had "a pretty rough history," but had made an effort to change. Counsel asked the Court to consider that Flowers had not committed violent crimes and counsel argued that Flowers deserved the mercy of the Court. (*Id.* at 13-14). The District Judge thoroughly considered and weighed all of the relevant factors. He explained that he was varying from the sentencing guidelines to account for the issue of disproportionality, but stressed that the variance was "necessarily tempered by the serious criminal history that [Flowers presents]." (Id. at 18). The Court added that but for Flowers's criminal history, "a more substantial reduction might have been appropriate." (*Id.*). Aside from stating that counsel "never even asked for a variance of departure," Flowers alleges no basis for a sentence reduction greater than the one granted by the District Court. Thus, Flowers fails to demonstrate a reasonable probability that his sentence would have been more lenient but for counsel's failure to more aggressively and pointedly argue for a downward departure or variance.

Therefore, the undersigned **FINDS** that Flowers has failed to establish ineffective assistance of counsel relating to sentencing.

## V.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

**1.**    Movant's Application Under 28 U.S.C. § 2255 for Writ of Habeas Corpus by a Person in State or Federal Custody (ECF No. 115) be **DENIED**;

**2.**    Respondent's Motions to Dismiss Movant Keith Flowers's Motion Pursuant to 28 U.S.C. § 2255 (ECF Nos. 123 and 124) be **GRANTED**; and

**3.**    This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court

of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**:  August 21, 2012.

Cheryl A. Eifert
United States Magistrate Judge